## IN THE UNTED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

BANESCO USA,

     Plaintiff,

         v.

CENTRO CITOPATOLÓGICO DEL
CARIBE, INC., ET AL.,

     Defendants.

CIVIL NO. 19-1697 (PAD)

## MEMORANDUM AND ORDER

Delgado-Hernández, District Judge.

This is a foreclosure action brought by Banesco USA ("Banesco") against Centro Citopatológico del Caribe, Inc. ("Centro Citopatológico"). Before the court is Banesco's "Motion for Summary Judgment In Rem and Memorandum of Law in Support Thereof Against Codefendant Centro Citopatológico del Caribe, Inc." (Docket No. 67). For the reasons explained below, the motion is GRANTED.

## I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. P. 56(c). A factual dispute is genuine "if the evidence is such that a reasonable jury could returned a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is "material" if it potentially affects the outcome of the suit under governing law. Id.

All reasonable factual inferences must be drawn in favor of the party against whom summary judgment is sought.  See, Shafmaster v. U.S., 707 F.3d 130, 135 (1st Cir. 2013)(so noting).  To resist summary judgment, however, the nonmovant must do more than show some metaphysical doubt as to a material fact.  See, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(articulating proposition).  Conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative, do "not suffice to ward off a properly supported summary judgment motion."  Nieves-Romero v. U.S., 715 F.3d 375, 378 (1st Cir. 2013).  Careful record review reflects absence of genuine dispute as to the facts identified in the section that follows.

## II.       STATEMENT OF FACTS

Banesco is a corporation with principal place of business in Coral Gables, Florida (Docket No. 1).  Centro Citopatológico is a corporation under the laws of the Commonwealth of Puerto Rico (Docket No. 1, ¶ 3).  On October 31, 2014, a Loan Agreement was executed between Banesco, Centro Citopatológico, Laboratorio Clínico, Oficinas and Puerto Rico Institute of Pathology, Inc. ("PRIPI") in the principal amount of $1,350,000.00 with annual interest at 6%, plus default interest at an annual rate of 2% in excess of the applicable rate and maturity date on October 31, 2019.  (Docket No. 68, Statement of Uncontested Material Facts "SUMF" at ¶ 6).  On that same date, a promissory note was issued by Centro Citopatológico, Laboratorio Clínico, Oficinas, and PRIPI, in favor of Banesco, Mortgage III through Deed No. 19, to secure the repayment of (a) the indebtedness evidenced by the note;  (b) an amount of 10% of the original principal amount of the note to cover costs, expenses and attorney's fees in the event of foreclosure or judicial collection, or collection in any proceeding in bankruptcy of the borrowers; (c) an amount

Banesco USA. v. Centro Citopatológico del Caribe, Inc., et al.
Civil No. 19-1697 (PAD)
Opinion and Order
Page 3

of 10% of the original principal amount of the note to cover any advances made under the mortgage deed; and (d) an amount of 10% of the original principal amount of the note to cover interests in addition to those secured by law.  SUMF at ¶ 7; Docket No. 1-9.

Banesco and Centro Citopatológico[1] executed a First Amendment to Credit Agreement on February 1, 2017.   SUMF at ¶ 8. Centro Citopatológico and other named co-defendants acknowledged and agreed that the total amount of principal and interest due and owed under the Loan Agreement as of January 30, 2017 was $1,270,099.15 of principal and $2,369.98 of interest; Centro Citopatológico ratified and confirmed all terms and conditions of the Loan Agreement and all loan documents executed on October 31, 2014.  Id.

The Loan Agreement, as amended, is guaranteed by, among others, the following mortgage note, which is secured by the following mortgage:

i.    Mortgage note executed by **Centro Citopatológico** on October 31, 2014, payable to the order of Banesco, for the principal amount of **$30,000.00** authenticated under affidavit number 499 of Notary Public Rafael L. Rovira Arbona ("Mortgage Note III"). See, **Exhibit 1**, Unsworn Declaration under Penalty of Perjury, ¶7(a); and **Docket No. 1-8**, Complaint, Mortgage Note III; and **Docket No. 37**, Answer to Complaint, ¶17.

ii.   The Mortgage Note III is guaranteed by a mortgage constituted through Deed Number 19 of Mortgage of October 31, 2014, before Notary Public Rafael L. Rovira Arbona recorded: (a) at Page 62 of Volume 1623, property number **29,456** of Río Piedras North, Registry of Property, Second Section of San Juan, (b) at Page 149 of Volume 1623, property number **25,713-B** of Río Piedras North, Registry of Property, Second Section of San Juan, and (c) at Page 148 of Volume 1623, property number **25,713** of Río Piedras North, Registry of Property, Second Section of San Juan ("Mortgage III"). See, **Exhibit 1**, Unsworn Declaration under Penalty of Perjury, ¶7(b); and **Docket No. 1-9**, Complaint, Mortgage III; and **Docket No. 37**, Answer to Complaint, ¶17.

SUMF at ¶¶ 9-11.

---

[1] The First Amendment to Credit Agreement was executed by all defendants as named in the Complaint.  SUMF at ¶ 8.

Mortgage Note III, which is secured by Mortgage III, encumbers the following properties located in San Juan, Puerto Rico, as described in the Registry of Property as follows:

**PROPERTY E:**

URBAN: Horizontal Property: Parking space number twenty eight (28) Parking space located in the basement of EL CENTRO II building Muñoz Rivera Avenue, Hato Rey, San Juan, Puerto Rico, with an areas of one hundred fifty seven square feet, equivalent to fourteen point fifty one square meters, bounded: on the NORTH, by the imaginary line that separated it from parking space twenty seven (27), on a distance of nineteen feet, on the SOUTH, by the imaginary line that separates it from parking space twenty nine (29), on a distance of nineteen feet, on the EAST, by the imaginary line that separates it from the circulation area, on a distance of nineteen feet, on the WEST, by the west retaining wall on a distance of eight feet three inches.  This unit has access on its Eastern boundary. Percentage: 0.031% in the general common elements.

The property described above is recorded at page 239 overleaf of volume 1014 of Río Piedras North, property number 29,456, Registry of Property, Second Section of San Juan.

**PROPERTY F:**

URBAN: Horizontal Property: Parking space number one hundred ninety six, Parking space located in the basement of El Centro Building Muñoz Rivera Avenue, Hato Rey, San Juan, Puerto Rico, with an area of one hundred seventy one square feet, equivalent to fifteen point eighty nine square meters, bounded on the NORTH, by the imaginary line that separates it from parking space one hundred ninety five on a distance of nineteen feet, on the SOUTH, by the imaginary line that separates it from parking space eighty, on a distance of nineteen feet, on the EAST, by imaginary line that separates it from the common area on a distance of nine feet, on the WEST, by the imaginary line that separates it from the circulation area, on a distance of nine feet. This unit has access on its Western boundary. Percentage: 0.031% in the general common elements.

The property described above is recorded at page 27 of volume 890 of Río Piedras North, property number 25,713-B, Registry of Property, Second Section of San Juan.

**PROPERTY G:**

URBAN: Horizontal Property: Parking space number one hundred ninety five, Parking space located in the basement of El Centro II Building Muñoz Rivera Avenue, Hato Rey, San Juan, Puerto Rico, with an area of one hundred seventy one square feet, equivalent to fifteen point eight nine square meters, bounded on the NORTH, by the imaginary line that

separates it from parking space one hundred ninety six on a distance of nineteen fee, on the SOUTH, by the imaginary line that separates it from parking space seventy seven and seventy eight, on a distance of nineteen feet, on the EAST, by imaginary line that separates it from the common area on a distance of nine feet, on the WEST, by the imaginary line that separates it from the circulation area, on a distance of nine feet. This unit has its access on its Western boundary.  Percentage: 0.031% in the general common elements.

The property described above is recorded at page 24 of volume 890 of Río Piedras North, property number 25,713, Registry of Property, Second Section of San Juan.

The minimum bid was set at $10,000.00 for Property E; $10,000.00 for Property F; and $10,000.00 for Property G.  SUMF at ¶¶ 12; 15-17.

On October 31, 2014, Banesco and Centro Citopatológico executed a Note Pledge and Security Agreement, an Assignment of Leases and Rents, and a Subordination Agreement, wherein Centro Citopatológico pledged, assigned, delivered, and transferred the Mortgage Note III to Banesco; and granted to Banesco a security interest over all right, title, and interest to the rents generated by Properties E, F, and G.  SUMF at ¶¶ 19-21.

Centro Citopatológico did not comply with the terms and conditions of the loan and is in default since December 3, 2018.  SUMF at ¶ 24.  As of February 27, 2020, Centro Citopatológico owes Banesco the total amount of $1,380,025.92 consisting of: $974,721.66 in principal; plus 5% interest of unpaid principal balance as penalty fee in the amount of $48,721.66; plus interests in the amount of $111,279.56 which continues to accrue, even post-judgment as per agreement of the parties, until full payment of the debt at $216.54 per diem; plus accrued late charges in the amount of $5,840.88; plus $7,868.61 in escrow; plus other charges in the amount of $5,840.00; plus any other advance, charge, fee or disbursements made by Banesco, on behalf of Centro Citopatológico, in accordance with the Loan Agreement, as amended, as well as under the other loan documents, plus costs and agreed attorneys' fees in the aggregated amount of $220,550.00.  SUMF at ¶ 23.

### III.    DISCUSSION

Under Puerto Rico law, which applies here, "obligations arising from contracts have legal force between the contracting parties and must be fulfilled in accordance with their stipulations." P.R. Laws Ann. tit. 31, § 2994.  A mortgage is a "guarantee of a debt, which in turn is secured by a particular property." Bautista Cayman Asset Company v. Vilariño-Rodriguez, 2018 WL 6422731, at *3 (D.P.R. Dec. 5, 2018).  A mortgage creditor "may seek foreclosure if the debtor defaults on the payment of any principal or interest due." CitiMortgage, Inc. v. Rivera-Anabitate, 39 F.Supp.3d 152, 154 (D.P.R. 2014).

Centro Citopatológico failed to fulfill its payment obligation under the mortgage note.  The note permits lender, upon Centro Citopatológico's default, to require immediate payment of the full amount of principal not paid, as well as all the interest owed on that amount.  Further, the note entitles Banesco, as the note holder, to collect its costs and expenses to enforce the note, fixed at 10% of the original principal amount.  Thus, there is no genuine issue of material fact as to the obligation, default, and amount owed.

### IV.    CONCLUSION

In light of the foregoing, the motion for summary judgment is GRANTED.  Accordingly, Centro Citopatológico is ordered to pay Banesco the outstanding principal balance of $1,380,025.92 consisting of: $974,721.66 in principal, plus interest at a rate of $216.54 per diem. The interest continues to accrue until the debt is paid in full.  Centro Citopatológico is further ordered to pay Banesco accrued late charges and any other advance, charge, fee or disbursements made by Banesco on behalf of Centro Citopatológico, in accordance with the mortgage deeds, plus costs, charges and disbursements, expenses and attorney's fees.  Additionally,

1. In default of the payment of the sums hereinbefore specified or of any part thereof, within fourteen (14) days from the date of entry of judgment, the mortgaged property described above shall be sold at public auction to the highest bidder, without an appraisal or right of redemption for the payment of plaintiffs' mortgage within the limits secured thereby.

2. Upon plaintiff's compliance with Fed. R. Civ. P. 53, the court may appoint a Special Master to conduct the sale, but the Special Master shall not proceed to carry out the sale, or do anything in connection with it, until further order by the court and under the form and conditions to be directed by the court.

3. The sale shall be subject to the confirmation of the court, and the purchaser or purchasers shall be entitled to receive possession. The minimum bid to be accepted at the first public sale in accordance with the mortgage deed is $10,000.00 for Property E; $10,000.00 for Property F; and $10,000.00 for Property G.

4. Any funds derived from the sale to be made in accordance with the terms of the judgment and any order(s) of the court shall be applied as follows:

   a. To the payment of all proper expenses attendant upon said sale, including the expenses, outlays and compensation of the Special Master, after the compensation and expenses shall have been fixed and approved by the court, all those expenses to be deducted from the sum provided in the deed of mortgage for costs, charges and disbursements, expenses, and attorney's fees.

   b. To the payment of all expenses or advances made by plaintiff.

   c. To the payment to plaintiff of the amounts due by Centro Citopatológico as of February 27, 2020, plus interest which continues to accrue until full payment of the debt at the rate of $216.54; accrued late charges and any other advance, charge, fee or disbursements made by Banesco on behalf of Centro Citopatológico, in accordance with the mortgage deed, plus costs, and 10% of the mortgage note principal balance in costs, expenses, and attorney's fees.

      d.  If after making all the above payments there shall be a surplus, the surplus shall be delivered to the Clerk of this Court, subject to further orders of the court.

      e.  If after making all those payments there is a deficiency, plaintiff may seek orders from the court to collect the deficiency from Centro Citopatológico.

Plaintiff may apply to the court for such orders, as it may deem advisable to its interests to satisfy its money judgment, in accordance with its terms.

**SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of January, 2022.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge
